UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VANESSA RIVERA and<br>VANESSA RIVERA as p/n/g of K.C.,<br><br>  Plaintiffs,<br><br>v.<br><br>SAFWAY SERVICES, LLC and<br>BRAND SAFWAY SERVICES, LLC<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:23-cv-12184-JEK<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON MOTIONS IN LIMINE**

This case concerns a motor vehicle accident involving the plaintiffs, Vanessa Rivera and her minor child K.C., and Joseph Giordano, a driver for defendants Safway Services, LLC and Brand Safway Services, LLC. The plaintiffs assert four counts of negligence against the defendants and seek damages for the physical, emotional, and financial injuries they allegedly suffered from the accident. In advance of trial, the parties have filed six motions in limine that are now pending before the Court. The defendants' motion to exclude the opinions of the plaintiffs' expert witnesses and to dismiss the complaint, ECF 53, and the plaintiffs' motion to exclude evidence and testimony regarding collateral source income, ECF 57, will be denied. The defendants' motion to exclude evidence and argument regarding the post-accident investigative report will be granted in part. ECF 54. The plaintiffs' motion to allow the use of leading questions while conducting direct examination of the defendants will be granted. ECF 58. The defendants' motions to exclude evidence and argument relating to the defendants' financial status, ECF 55, and to exclude evidence and argument relating to the defendants' post-accident apology, ECF 56, will be granted as unopposed.

## DISCUSSION

I. **ECF 53: Defendants' Motion to Exclude the Expert Opinions of Plaintiffs' Experts and to Dismiss the Complaint for Failure to Satisfy Jurisdictional Requirements.**

The defendants first move to preclude evidence related to, and testimony by, the plaintiffs' experts, Dr. Nikhil Thakur and Maryanne Cline. Dr. Thakur is a board-certified orthopedic spine surgeon who conducted an independent medical examination of Rivera, and Cline is a registered nurse and a certified nurse life care planner who calculated the projected cost of Rivera's future medical expenses based on Dr. Thakur's findings. ECF 53-5, Ex. B, at 11; ECF 53-5, Ex. E, at 52. Because the plaintiffs' invocation of this Court's diversity jurisdiction under 28 U.S.C. § 1332(a) depends on these expert opinions to establish damages exceeding $75,000, the amount in controversy required by the statute, the defendants also argue that exclusion of these experts' testimony requires dismissal of this action for lack of subject matter jurisdiction.

The defendants first argue that Dr. Thakur's opinions are inadmissible under Federal Rule of Evidence 702, which governs the admissibility of expert opinion evidence. Rule 702 provides that a qualified expert may offer opinion testimony if "it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

"The objective of the 'flexible' inquiry envisioned by Rule 702 is to ascertain 'the scientific validity and thus the evidentiary relevance and reliability' of the proffered expert testimony." *Doucette v. Jacobs*, 106 F.4th 156, 169 (1st Cir. 2024) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993)). The court's determination must rest "'solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

"'The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.'" *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Accordingly, "'[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony' and thus 'a question to be resolved by the jury.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Milward*, 639 F.3d at 22). This is so even where "the expert's conclusion is arguably contradicted by aspects of the record," so long as "the expert's methodology itself is sound." *Doucette*, 106 F.4th at 169. Where, however, the expert's opinion testimony rests on "'the ipse dixit of the expert'" or "evinces significant 'analytical gap[s] between the data and the opinion proffered,'" excluding the testimony may be appropriate. *Id.* (emphasis omitted) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The defendants contend that Dr. Thakur's opinions are not founded on a satisfactory level of analytical rigor and are not the product of reliable principles and methods. The Court is not persuaded. Dr. Thakur's opinions are contained within a report written after he conducted a physical examination of Rivera and took her medical history. His opinions are derived from that independent medical examination and his interpretation of medical records from Rivera's other healthcare providers. ECF 53-5, Ex. A, at 6. The defendants do not attack any procedure undertaken during the examination, but instead highlight a number of "errors and omissions" in the report that they believe warrant exclusion: (1) Dr. Thakur described the accident as a slip and fall instead of a motor vehicle accident; (2) Dr. Thakur did not reference any medical records contradicting his description of Rivera's ongoing complications and his diagnosis of a C4-C5 disc herniation; (3) Dr. Thakur stated that Rivera "'completed'" physical therapy without mentioning

3

her request for a discharge; (4) Dr. Thakur failed to explain why Rivera should return for several years of physical therapy when she has not been to physical therapy for almost three years; and (5) Dr. Thakur did not discuss the February 2023 report from Shields MRI Boston, in which Dr. David Yu concluded that Rivera did not have a C4-C5 disc herniation. ECF 53, at 4-5. These disputes over the factual underpinnings of the report do not evince a "significant 'analytical ga[p]'" between Dr. Thakur's opinions and the record evidence. *Doucette*, 106 F.4th at 169 (quoting *Gen. Elec. Co.*, 522 U.S. at 146). And the defendants' only methodological quibble—that Dr. Thakur did not wait until two years after the accident to measure Rivera's maximum medical improvement—is not a significant enough analytical issue to merit wholesale exclusion of his opinions. ECF 53, at 6 n.3; *see also* ECF 53-5, Ex. A, at 6 (reflecting that Dr. Thakur examined Rivera a little over a year and ten months after her accident); *id.* at 9 (acknowledging that Rivera "has not reached maximum medical improvement because she has not come to her 2 year milestone from her car accident," but nonetheless expressing that, "to a reasonable degree of medical certainty, without any further intervention she will continue to have the symptoms as we are coming close to the 2-year point"). Because the defendants' arguments ultimately bear on the weight and credibility of Dr. Thakur's opinions, not their admissibility, they should be addressed through cross-examination at trial, not excluded.

      The defendants next argue that Dr. Thakur's conclusions regarding Rivera's future medical treatment are "speculative and precatory" and must be excluded under Massachusetts law governing recovery for future damages. ECF 53, at 5; *see also Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 74 (1st Cir. 1999) (state law, including regarding availability of damages, provides the substantive rules of decision in diversity cases). In Massachusetts, "[a] plaintiff is entitled to compensation for all damages that *reasonably* are to be expected to follow,

4

but not to those that *possibly* may follow, the injury which he has suffered." *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 223 (2009) (emphasis added and citation and quotation marks omitted). Applying that rule, a different session of this Court held in *Arcudi v. Builder Services Group, Inc.* that Dr. Thakur's testimony regarding a plaintiff's future surgical needs was too speculative to be admissible. *See* 673 F. Supp. 3d 9, 15 (D. Mass. 2023). There, "Dr. Thakur did not recommend surgical intervention as future care"; instead, "[h]e merely opine[d] that it would be to [the plaintiff's] benefit if she were to visit a surgeon who would then evaluate her, and the surgeon would then consider whether they recommend . . . surgery." *Id.*

Dr. Thakur's opinions in *Arcudi* are materially different than the opinions offered here, because his statements in *Arcudi* "merely indicate[d] surgery [was] no more than possible" via a chain of contingent recommendations. *Id.* Here, by contrast, Dr. Thakur has concluded that "[t]o a reasonable degree of medical probability, [Rivera] is a candidate for a c4-5 disc replacement" and would benefit from a number of treatments. ECF 53-5, Ex. A, at 9. The defendants argue that Dr. Thakur "does not opine that the surgery is medically necessary or required" and that his opinions are made all the more speculative because Rivera has not followed Dr. Thakur's recommendations. ECF 53, at 6. A plaintiff, however, "is not restricted to compensation for suffering and expense" that "will *inevitably* follow," because "suffering and expense following an injury cannot be foretold with exactness." *Donovan*, 455 Mass. at 223 (emphasis added). Instead, a plaintiff may be compensated for expenses "which by a fair preponderance of the evidence [she] has satisfied the jury reasonably are to be expected to follow." *Id.* Under this standard, Dr. Thakur's opinions regarding Rivera's future medical treatment do not warrant exclusion.

The defendants next contend that Dr. Thakur's opinions should be excluded under Federal Rule of Evidence 403 because "it is likely that a jury will assign considerable weight to his

5

opinions based on his credentials and experience alone." ECF 53, at 7. As a result, they claim, the probative value of his testimony will be substantially outweighed by the danger of jury confusion, given the "stark contrast" between Dr. Thakur's report and Rivera's deposition testimony. *Id.* The Court disagrees. Unlike in *Arcudi*, where the Court was considering contingent statements regarding the plaintiff's possible need for future surgery, Dr. Thakur's recommendations for Rivera's treatment carry weightier probative value here and will assist the jury by providing an expert perspective on Rivera's injuries and her recommended future treatment. Because the evidentiary value of these opinions is not substantially outweighed by the risk of jury confusion or unfair prejudice, exclusion of his report and testimony is unwarranted.

The defendants' only justification for moving to exclude Cline's medical cost projections hinges on the preclusion of Dr. Thakur's opinions. Because the Court will not exclude his statements, Cline's opinions regarding the costs of the treatment likewise will not be excluded. As a result, the amount in controversy remains in excess of $75,000, and the Court has subject matter jurisdiction over this case. The defendants' motion will be denied.

II. **ECF 54: Defendants' Motion to Exclude Evidence and Argument Relating to Their Post-Accident Investigative Report.**

The defendants move to preclude evidence and argument regarding a post-accident investigative report created by their Area Safety Manager, Gary Johnston. Johnston was not an eyewitness to the accident, but he generated the report after responding to the scene following the collision, speaking to the parties involved, and taking photographs. The defendants argue that the report is unfairly prejudicial and misleading because the statement of fault in that report was created by a lay person and improperly offers a legal opinion on a key issue in the case.

A lay witness may offer opinion testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in

6

issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. But under Rule 701, "evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988) (in a negligence case, excluding accident report by a lay eyewitness that contained statements opining on the cause of the accident because "[l]egal causation was very much in dispute," so "the opinion as to causation served to do nothing more than tell the jury what result it should reach"); *see also Adams v. New England Scaffolding, Inc.*, No. 13-cv-12629-FDS, 2015 WL 9412518, at *7 (D. Mass. Dec. 22, 2015) (explaining that an expert witness "normally should not be permitted to testify as to an ultimate legal conclusion, such as an opinion that a defendant was 'negligent'" because the opinion would do no more than indicate what the witness believes the verdict should be).

In the accident report, Johnston checked a box indicating that the "[c]ompany driver [was] at fault." ECF 54-2, at 4. That portion of the report will be redacted because, as in *Kostelecky*, legal causation is at the heart of this negligence case, and Johnston's opinion on whether the company driver, Joseph Giordano, was at fault "merely tells the jury what result to reach." 837 F.2d at 830. The rest of the report, however, will not be excluded on those grounds, as it does not reflect Johnston's opinion regarding fault. *See Zibolis-Sekella v. Ruehrwein*, No. 12-cv-228-JD, 2013 WL 12177907, at *2-3 (D.N.H. Oct. 8, 2013) (declining to exclude entire accident report and instead only requiring redactions of specific statements in the report that were implicated by the plaintiff's argument for exclusion).

The plaintiffs counter that the report's statement of fault should be admissible as impeachment evidence on cross-examination. According to the plaintiffs, the report is a prior

7

inconsistent statement because Johnston stated at his deposition that he no longer considered Giordano responsible for the accident because he "believe[d] that [Giordano] would have seen the car coming." ECF 54-3, at 3. The Court "is free to use its informed discretion to exclude extrinsic evidence of prior inconsistent statements on grounds of unwarranted prejudice, confusion, waste of time, or the like." *United States v. Hudson*, 970 F.2d 948, 956 n.2 (1st Cir. 1992); *see also* Fed. R. Evid. 403. Although Johnston's inconsistency may bear on his credibility, the statement of fault in the report poses too great a risk of unfair prejudice and jury confusion for the Court to permit its use on cross-examination, even with a limiting instruction. The statement was made by the defendants' employee, and it communicates a legal conclusion that is central to the case and effectively "tell[s] the jury what result it should reach." *Kostelecky*, 837 F.2d at 830. Johnston may not, therefore, testify at trial—either on direct or cross-examination—regarding his view on whether Giordano was at fault. The defendants' motion will accordingly be granted in part, but only as to the statement of fault listed in the report and testimony related to Johnston's assessment of Giordano's responsibility for the accident.

### III.     ECF 55: Defendants' Motion to Exclude Evidence and Argument Relating to Their Financial Status.

The defendants move to exclude all evidence and argument relating to their financial status, including private equity ownership, as irrelevant and unfairly prejudicial. The motion is unopposed and will therefore be granted.

### IV.     ECF 56: Defendants' Motion to Exclude Evidence and Argument Relating to Their Post-Accident Apology.

The defendants move to exclude all evidence and argument relating to Giordano's and Johnston's apologies to Rivera at the scene of the accident and any other statements of sympathy related to the accident. The motion is unopposed and will be granted.

V.    **ECF 57: Plaintiffs' Motion to Exclude Evidence and Argument Relating to Collateral Source Income.**

The plaintiffs move to preclude the defendants from offering evidence and testimony concerning payments made under their health insurance and any other collateral sources of recovery, and to redact insurance information from their medical records and bills.

In Massachusetts, "[t]he substantive aspect of the collateral source rule . . . provides that 'compensation received from a third party unrelated to a tortfeasor-defendant (the collateral source) will not diminish an injured party's recovery from that tortfeasor.'" *England v. Reinauer Transp. Cos., L.P.*, 194 F.3d 265, 273 (1st Cir. 1999) (quoting *Fitzgerald*, 177 F.3d at 73). Massachusetts' substantive rule of damages "must be given full credit" in this diversity case. *Fitzgerald*, 177 F.3d at 74. The "evidentiary strand" of the collateral source rule, however, is governed by the Federal Rules of Evidence—in particular, Rules 401, 402, and 403. *England*, 194 F.3d at 273. Under those rules, "[e]vidence of collateral benefits offered to show that an [individual] has already received compensation for his injuries is generally inadmissible" because proof of that compensation would not mitigate—and therefore is irrelevant to—the calculation of damages. *Id.* (citation and quotation marks omitted); *see Fitzgerald*, 177 F.3d at 74; Fed. R. Evid. 402. "When such evidence is relevant to some other contested issue, however, it may be admitted if it is not unfairly prejudicial[.]" *England*, 194 F.3d at 273-74; *see Fitzgerald*, 177 F.3d at 75 ("[A] jury, informed, say, that a plaintiff has recourse to first-party insurance proceeds, may be unduly inclined to return either a defendant's verdict or an artificially low damage award.").

The defendants argue that the collateral source income evidence is relevant to the scope of Rivera's injuries, their relationship to the accident, and her need for further treatment. Pointing out that Rivera's insurance covered only some of her medical visits closer in time to the collision, the defendants note that these limited payments bear on Rivera's "medical end point" and her alleged

9

need for further medical care in connection with the accident. *See* ECF 60, at 2-3. These issues are also relevant to witness credibility, they contend, because there is a disparity between, on the one hand, the insurance company's unwillingness to pay for Rivera's physical therapy in 2022, and on the other, the anticipated testimony from Rivera and the plaintiffs' experts regarding her need for future treatment and the projected costs of that care.

Because the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or jury confusion under Rule 403, the Court will deny the plaintiffs' motion. However, to address the plaintiffs' concerns, *see* ECF 57, at 1-2, the Court will issue an appropriate limiting instruction, *see DeMedeiros v. Koehring Co.*, 709 F.2d 734, 740-41 (1st Cir. 1983) (affirming admission of evidence regarding collateral source income with a limiting instruction that the evidence "bears on [the plaintiff's] motivation in declining the job and its admissibility is limited to that extent").

### VI.     ECF 58: Plaintiffs' Motion to Allow Use of Leading Questions on Direct Examination of an Adverse Witness.

The plaintiffs move for permission to use leading questions when conducting direct examination of the defendants. Under Federal Rule of Evidence 611(c), the court should "allow a plaintiff who calls an adverse party on direct to use leading questions in his examination because the witness is presumed hostile." *Elgabri v. Lekas*, 964 F.2d 1255, 1260 (1st Cir. 1992); *see* Fed. R. Evid. 611(c)(2). The plaintiffs' motion will therefore be allowed.

In their limited opposition to this motion, the defendants seek a reciprocal order permitting them to use leading questions when cross-examining the same witnesses. ECF 61, at 1. Traditionally, the use of leading questions on cross-examination is "a matter of right." Fed. R. Evid. 611 advisory committee notes to 1972 proposed rules. But where, as here, "the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-

examination' of a party by his own counsel after being called by the opponent," the Court may prohibit the use of leading questions. *Id.*; *see also Candelario Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico*, No. 08-cv-1833-PAD, 2014 WL 12726081, at *6 (D.P.R. Dec. 3, 2014). The defendants' request will accordingly be denied without prejudice to renewal at trial, when the Court can best determine whether the use of leading questions may be justified. *See United States v. Mulinelli-Navas*, 111 F.3d 983, 990 (1st Cir. 1997), *as amended* (May 23, 1997) ("[T]he use of leading questions . . . must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing him." (citation and quotation marks omitted)).

## CONCLUSION AND ORDER

For the foregoing reasons, ECF 55, 56, and 58 are GRANTED; ECF 54 is GRANTED in part; and ECF 53 and 57 are DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: April 23, 2025